```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


James H. Treesh, Jr.,          :

          Plaintiff,           :    Case No. 2:10-cv-211

   v.                          :    JUDGE SMITH

Leha Bobb-Itt et al.,          :

          Defendants.          :
```

ORDER

On May 26, 2010, the Magistrate Judge issued a Report and Recommendation proposing that plaintiff James H. Treesh, Jr.'s motion for injunctive relief be denied. Mr. Treesh filed a motion for reconsideration on June 7, 2010. The Court will construe the motion for reconsideration as a timely objection to the Report and Recommendation. Following de novo review, the Court overrules the objection and adopts the Report and Recommendation in its entirety. Accordingly, plaintiff's motion for injunctive relief will be denied.

I.

When objections are received to a report and recommendation on a dispositive matter, the District Judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.; see also 28 U.S.C. §636(b)(1)(C).

II.

The motion for injunctive relief seeks certain protections for all Native American practitioners at the Chillicothe Correctional Institution and at any other prison whether situated

within the State of Ohio or within any other state or territory. The protections being sought include safeguards against all forms of abuse, medical malpractice, negligence, and mistreatment by the mental health facilities.  The motion also seeks protection from unsupervised locker box and bunk area searches where the inmate is not present.  Lastly, the motion aims to protect from seizure, as contraband, any and all sacred items in the possession of Native American practitioners.

The Magistrate Judge determined that in the absence of a motion to certify a class, such class-wide relief is inappropriate.  The Magistrate Judge also found that, as a pro se prisoner, Mr. Treesh may not, in any event, proceed as a representative of a class comprised of imprisoned Native American practitioners.  For these reasons, the Magistrate Judge recommended that the motion for injunctive relief be denied.

Mr. Treesh's motion for reconsideration does not address the Magistrate Judge's concerns.  Mr. Treesh starts off by informing the Court that a "2.4 Box Check" will take place the week of June 3, 2010, through June 12, 2010.  According to him, all inmates will be ordered at that time to clean out their areas of any contraband and any legal materials that are not current.  He fears that he will be forced out of malicious retaliation to discard legal materials that are pertinent to this case, as well as his criminal case.

Mr. Treesh turns next to a series of events that allegedly began on May 6, 2010, after he filed an informal complaint against several "white shirts" for their purported use of intimidation tactics against him during chow hall.  He left the chow hall and decided to stop by Post 5 to obtain the names and addresses of the defendants in his two lawsuits.  As he was about to enter this area, three corrections officers rode up on bicycles and accused him of digging in the dirt and removing a

stone or two.  He was denied any opportunity to explain his actions.  He was subsequently placed in administrative segregation for twenty days for unauthorized use of a medical device (a cane) to turn over a piece of quartz.

Mr. Treesh was released from administrative segregation on May 26, 2010, and went to see Inspector Free to obtain a make-up commissary day.  When he returned to his cell, his legal papers were supposedly missing.  He believes that they were taken in retaliation for his complaints.  He also believes that he was placed in isolation to prevent him from attending a Native American pipe ceremony held on May 11, 2010.  On June 1, 2010, he was ordered to report to the sergeant's office for a conduct report hearing.  He maintains that the misconduct report was baseless and that the corrections officer wrote the ticket to prevent him from shopping for writing materials and envelopes on his make-up day at the commissary.

Clearly, the events recounted by Mr. Treesh in his objection bear little or no relationship to the protections sought in his motion for injunctive relief.  The only circumstances which are even remotely connected is the charge that he was placed in isolation to preclude his participation in a Native American religious ceremony and the news that a "2.4 Box Check" would take place the week of June 3, 2010.  There is nothing apart from the timing to indicate that plaintiff's placement in isolation had anything to do with the pipe ceremony and whatever may have occurred during the "2.4 Box Check" is in the past.  See United States v. Fang, 937 F.Supp. 1186, 1198 (D.Md. 1996)("Injunctive relief by its very nature is prospective; it looks not to correct past wrongs but to prohibit future wrongs.").  Furthermore, the facts alleged  in plaintiff's motion for reconsideration were not before the Magistrate Judge.  Generally, a matter raised for the first time in an objection to a magistrate judge's report and

recommendation is not properly before the district court. United States v. Armstrong, 951 F.2d 626, 630 (5th Cir.1992).

The Court has examined the nature of the relief sought by Mr. Treesh and determines that, in the absence of a motion to certify class, he may pursue remedies only on the basis that his own rights have been violated. Newsom v. Norris, 888 F.2d 371, 381 (6th Cir.1989); Dodson v. Wilkinson, 304 Fed.Appx. 434, 438 (6th Cir.2008). Furthermore, the Sixth Circuit has repeatedly held that a pro se inmate may not serve as a class representative. Garrison v. Michigan Dept. of Corrections, 333 Fed.Appx. 914, 919 (6th Cir.2009). Because no motion to certify class is pending and because Mr. Treesh may not, in any event, act as a class representative, his motion for injunctive relief must be denied.

### III.

Besides the document styled as "A Motion for Injunctive Relief," Mr. Treesh submitted certain letters (docs. 9,11) which contain additional requests for injunctive relief. The Magistrate Judge interpreted these requests as a motion for preliminary injunction and directed those defendants who had been properly served to respond. On June 14, 2010, the defendants filed their response in opposition. After considering the parties' arguments, the Court will also deny plaintiff's requests for preliminary injunctive relief.

The Court is required to weigh four factors in determining whether a party is entitled to a preliminary injunction under Fed. R. Civ. P. 65(a). Those factors are: (1) the likelihood that the party seeking the injunction will succeed on the merits of the claim; (2) the extent to which the party seeking the injunction will be injured unless relief is granted, focusing particularly on the possibility of irreparable injury; (3) whether the injunction, if issued, will cause substantial harm to others; and (4) whether

issuance of the injunction is in the public interest. <u>See</u> <u>Washington v. Reno</u>, 35 F.3d 1093, 1099 (6th Cir.1994). No one factor is dispositive. Rather, these four factors must be balanced in determining whether preliminary injunctive relief should issue. <u>In re Delorean Motor Co.</u>, 755 F.2d 1223, 1229 (6th Cir.1985). In any civil action involving prison conditions, the Prison Litigation Reform Act imposes additional requirements.

> Preliminary injunctive must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.

18 U.S.C. §3626(a)(2).

In one of the two letters at issue, Mr. Treesh requests injunctive relief to stop all searches of his person, property, and bunk area; and to protect all information he has gathered and any and all Native American religious items in his possession. He asks that the injunctive relief also include protection of his Native American practices. In the other letter, Mr. Treesh asks for injunctive relief in the form of a protective order to keep him from any contact with Lt. McGrew, Captain McKee, Lt. Tammy Smith, DWSS Bobb-Itt, Captain Brown, Lt. Bloskee, Major Clever, Lt. Oyer, Captain Clerk, and CO Bethel.

In regard to the first letter Mr. Treesh has not established a likelihood of success on the merits. The Fourth Amendment's prohibition of unreasonable searches does not apply to prison cells. <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984). Random searches are essential to prison security. <u>Id</u>. To the extent these searches have resulted in, or will result in, the destruction of plaintiff's personal property, he has failed to show the absence of adequate state tort remedies to redress such destruction. <u>See</u> <u>id</u>. at 533 (even intentional deprivations of property by state officials do not violate due process provided

5

that adequate state post-deprivations are available).  Mr. Treesh also has not shown that he is, or will be, prejudiced by the destruction of any legal papers so as to deny him his right of meaningful access to the courts.  Traylor v. Davis, 23 F.3d 408 (table), 1994 WL 168511 at *1 (6th Cir. May 3, 1994).  Finally, Mr. Treesh has not demonstrated that the defendants have substantially burdened his right to practice his religion.  See Hoevenaar v. Lazaroff, 422 F.3d 366, 368 (6th Cir.2005)(Religious Freedom Restoration Act only applies if plaintiff makes initial showing that challenged policy places substantial burden on his religious exercise).

    Mr. Treesh also has failed to establish a likelihood of success with respect to the relief sought in the second letter.  Federal courts are required to give substantial deference and flexibility to state officials trying to manage a prison environment.  Sandin v. Conner, 515 U.S. 472, 482-83 (1995).  To order a host of supervisory personnel at CCI not to have any contact with plaintiff in the performance of their duties is clearly inconsistent with this mandate.  Moreover, Mr. Treesh offers only conclusory allegation that these defendants are engaging in psychological warfare in an alleged attempt to cause him mental instability and psychological disorders.

    In neither instance has Mr. Treesh alleged facts showing that he will suffer irreparable harm if the requested injunctive relief is not granted.  On the other hand, the prohibition of any searches of plaintiff's person, property, or bunk area or any contact between Mr. Treesh and a number of CCI personnel could expose inmates, corrections officers, and the public to increased safety risks.  See Crump v. Curtis, 50 Fed.Appx. 217, 218-19 (6th Cir.2002).  Under these circumstance, none of the traditional factors governing the issuance of preliminary injunctions weigh in favor of granting Mr. Treesh his requested relief.  In

addition, the scope of plaintiff's requests far exceeds what might otherwise be permissible under the PLRA. The Court therefore will deny the requests for injunctive relief contained in two of plaintiff's letters.

IV.

Based on the foregoing reasons, the Court denies Mr. Treesh's motion for reconsideration (doc. 30) and adopts the Report and Recommendation (doc. 26) in its entirety. Accordingly, plaintiff's motion for injunctive relief (doc. 10) is denied. It is further ordered that the additional requests for injunctive relief contained in two of Mr. Treesh's letters (docs. 9, 11) are denied.

/s/ George C. Smith
George C. Smith
United States District Judge