IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**James H. Treesh, Jr.,**

    **Plaintiff,**

  v.

**Leha Bobb-Itt et al.,**

    **Defendants.**

Case No. 2:10-cv-211

**J U D G E   G E O R G E   C . SMITH**
**Magistrate Judge Kemp**

### OPINION AND ORDER

Plaintiff James H. Treesh, Jr. is a prisoner residing at the Chillicothe Correctional Institution("CCI"). He filed this action under 42 U.S.C. §1983 against a number of employees at CCI, alleging that they deprived him of his constitutional rights. This matter is presently before the Court on cross-motions for summary judgment filed by Mr. Treesh and by defendants Leah Bobb-Itt, Anthony Payne, Chad Brown, and Glen Bryan. The Court will also consider Mr. Treesh's motion for a preliminary injunction (#67) and his objection to an order issued by the Court denying some of his prior motions (#68). For the following reasons, the Court will grant summary judgment to the moving defendants and will dismiss the case.

### I.  FACTUAL BACKGROUND

To provide a context for analyzing the parties' cross-motions for summary judgment, the Court takes the following facts from Mr. Treesh's complaint. On July 9, 2009, at approximately 12:40 p.m., Mr. Treesh was stopped in the chow hall at CCI for wearing Native American headgear containing feathers. Lt. Sharon Branham forced Mr. Treesh to remove the headgear. As Mr. Treesh walked away from Lt. Branham, Anthony Payne, a corrections officer, yelled

obscene language at him and threatened to place him in segregation if he continued to wear such headgear.

Prior to this incident, Mr. Treesh claims that he had sought and obtained permission to wear the feathers as part of the practice of his Native American religion.  Leah Bobb-Itt, the deputy warden for special services at CCI, was supposed to have posted a notice to all staff members that all Native American prisoners at CCI were permitted to wear feathers in their hair. At the time Mr. Treesh was stopped, at least according to the complaint, Ms. Bobb-Itt had neglected to do so.

The next day, July 10, 2009, at approximately 6:30 a.m., Officer Payne again allegedly stopped Mr. Treesh at the chow hall.  He supposedly yelled obscene language at Mr. Treesh and threatened to place him in administrative segregation for ten days.  Officer Payne then ordered plaintiff to Lt. Branham's office.  Once Mr. Treesh arrived, Lt. Branham wrote a conduct report charging Mr. Treesh with disobedience and disrespect and placed Mr. Treesh in isolation.

On July 14, 2009, Lt. Lucy McGrew conducted an initial hearing regarding the conduct report.  She allowed Mr. Treesh to enter a not guilty plea, but did not permit him to speak further about the incidents that had occurred on July 9 and July 10, 2009.  During the hearing, Mr. Treesh claims that Lt. McGrew yelled at him aggressively and threatened him with additional time in isolation if he persisted in trying to make his position known.

The next matter addressed in the complaint is a time period running from November 5, 2009 to November 15, 2009.  During that time, Mr. Treesh was in isolation.  He claims that while in isolation, he was deprived of his pain medication (ibuprofen) and experienced a great deal of pain as a result.  He claims that his pain worsened because he had to sleep on a steel bunk.  Mr.

Treesh also claims that he lost several items of personal property while in isolation, including nine envelopes, a GED study book, and two or three Native American study books. He claims that the only literature he was allowed to keep was a bible. He asserts that Captain Chad Brown supervised the property pickup at his cell and that Captain Brown permitted several corrections officers to search through Mr. Treesh's property and read his legal documents.

After Mr. Treesh returned to his regular cell, he claims to have discovered that other items of personal property were missing. These included a hand-made smudge bowl used in purifications, seven sacred religious prayer stones used in religious practices, and a one-ounce bag of sage used in purifications and as an offering to the great spirits. In addition, Mr. Treesh found that a large goose feather, used in smudgings and prayers, had been damaged while he was serving his sentence in isolation. Due to the missing religious items, he claims not to have been able to participate in regular morning and evening prayers for some period of time.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c)(1), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654 (1962). The nonmoving

party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).   Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact,"  *Celotex*, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

### III.  LEGAL ANALYSIS

#### A. Wearing Native American Headgear

Mr. Treesh asserts his religious-based claims under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§2000cc *et seq*.  His complaint also refers to the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§2000bb et seq., but that remedy is no longer available because the Supreme Court concluded that to the extent that the RFRA was intended to apply to the States, its enactment exceeded Congress' powers to legislate pursuant to §5 of the Fourteenth Amendment and it cannot constitutionally be applied to the States or to state officials. See City of Boerne v. Flores, 521 U.S. 507 (1997).  Because RLUIPA affords more protection to an inmate's right to the free exercise of religion than does the First Amendment, the Court will first consider Mr. Treesh's claims under that statute.

>RLUIPA provides, in relevant part, that
>
>>[no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>>
>>(1) is in furtherance of a compelling governmental interest; and
>>
>>(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1(a). As an initial matter, the Court notes that Mr. Treesh seeks compensatory and punitive damages as well as injunctive relief under RLUIPA. But monetary damages are not available under this statute against either state officials sued in their official capacities or against the States themselves. *Sossamon v. Texas*, 131 S.Ct. 1651 (2011); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009). It is an open question, however, if RLUIPA allows damages to be awarded against state officials sued in their individual capacities, but District Courts within this circuit have held that such suits, which would be in the nature of a private right of action under RLUIPA, are not authorized. *See Heard v. Caruso*, 2010 WL 5759027 (W.D. Mich. May 27, 2010), *adopted and affirmed* 2011 WL 444769 (W.D. Mich. Jan 31, 2011). This Court will similarly not discuss further any claim for damages under RLUIPA.

As for Mr. Treesh's claim under the Free Exercise clause of the First Amendment, it is clear that prisoners, simply because of their confinement, are not thereby deprived of the right to follow the teachings of, and engage in the practices of, a religion in which the inmate sincerely

believes.  *See e.g., Bell v. Wolfish*, 441 U.S. 520 (1979); *Cruz v. Beto*, 405 U.S. 319 (1972).  At the same time, however, an inmate's right to practice his or her chosen religion is not identical to the right to do so which is enjoyed by non-prisoners.  Rather, a prisoner's right to religious freedom must be balanced against, and at times made subservient to, the legitimate interests of penological safety, order, and the corrections process.

In order to demonstrate a violation of the right to religious freedom in the prison setting, a plaintiff must prove the following.  First, the plaintiff must show that the religion in question is, in fact, a religion.  If it is a non-traditional religion, the inmate must show that it "occupies a place in the lives of its members 'parallel to that filled by the orthodox belief in God' in religions more widely accepted in the United States."  *Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir. 1986), *cert. denied*, 483 U.S. 1007 (1987).  Several sub-issues are involved in making that determination, including whether the doctrines of the religion relate to a spiritual aspect of life, whether the religion adheres to belief in a supreme being, whether it has ceremonial worship practices, and whether it has been practiced or recognized for a significant period of time.  Id. The plaintiff must also demonstrate a sincere belief in the tenets of the questioned religion.

If a plaintiff can demonstrate a sincere belief in a recognized or legitimate religion, the prisoner's right to practice that religion must be accommodated by prison officials unless it interferes in some fashion with the need for internal order and discipline which is essential to the prison setting.  Thus, the proper test to be applied to whether an institutional denial of the right to engage in certain religious practices or ceremonies is an appropriate restriction on an inmate's First Amendment rights is as follows: whether the restriction is logically related to a legitimate interest in security, whether the inmate is provided with alternative means of exercising his right

to pursue the religion in question, the impact of any accommodations of the practice on other inmates, prison personnel, or the allocation of prison resources, and the existence of ready alternatives to the challenged regulation or prohibition. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); Turner v. Safley, 482 U.S. 78 (1987).

In this case, the defendants do not question the sincerity of Mr. Treesh's religious beliefs. However, they point out that the Ohio Department of Rehabilitation and Correction has adopted strict rules regarding the appearance and grooming of male inmates such as Mr. Treesh. See Ohio Adm. Code 5120-9-25. These rules are designed to maintain order by limiting jealousy and theft among inmates, avoiding gang paraphernalia, and controlling the types of personal items inmates can possess. *See* Declaration of Wanza Jackson (attached to defendants' motion), ¶4. Inmates can seek an exemption from the usual dress requirements to accommodate a sincerely held religious belief. *Id.* at ¶5; Ohio Adm. Code 5120-9-25(O).

Ms. Jackson is the religious services administrator at ODRC. *See* Declaration at ¶2. As part of her duties, she maintains copies of requests for religious accommodations which have been approved by the wardens at the various ODRC institutions. *Id*. at ¶¶6,7. According to her review of Mr. Treesh's records, he never requested a religious accommodation that would allow him to wear a feather on a routine basis. *Id* at ¶8.

Ms. Bobb-Itt also submitted a declaration pursuant to 28 U.S.C. §1746. She served as the deputy warden for special services at CCI from September 2006 to July 2010, when she resigned to accept a new position. Declaration of Leah Bobb-Itt, ¶2. In her capacity as deputy warden for special services, she was responsible for approving inmates' requests for religious accommodations. *Id.* at ¶3. While an inmate at CCI, Mr. Treesh requested religious

7

accommodations based upon his beliefs as a Native American.  On February 27, 2008, Chaplain Lawrence E. Freeman issued a memorandum stating that Mr. Treesh was allowed to have certain items, including a headband with feather, for ceremonial purposes.  *Id.* at ¶4.

Because the case is before the Court by way of a summary judgment motion, one question is whether the Court may take these statements of the defendants and their witnesses to be true.  Here, the moving defendants have satisfied their initial burden under Fed. R. Civ. P. 56(c)(1) by citing with particularity those portions of the record they rely on to show the absence of a genuine issue of material fact regarding Mr. Treesh's free exercise claim.  The declarations of Ms. Jackson and Ms. Bobb-Itt are based on their personal knowledge, set out facts which would be admissible in evidence, and show that the declarants are competent to testify on the matters stated therein.  *See* Fed. R. Civ. P. 56(c)(4).

In light of Ms. Jackson's and Ms. Bobb-Itt's declarations, Mr. Treesh cannot rely on the mere allegations in his complaint to create a factual issue about the matters which are set forth in those declarations.  With respect to his own motion, he must show that the material facts are not in dispute and that he is entitled to summary judgment.  Regarding the defendants' motion, he must demonstrate that the relevant facts are disputed and the defendants are therefore not entitled to summary judgment.  In order to satisfy his burden under either scenario, Mr. Treesh must cite "to particular parts in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials ..." Fed. R. Civ. P. 56(c)(1)(A).  Mr. Treesh has not done so.

The Court finds as a matter of law that ODRC's rules regarding the appearance and grooming of male inmates is logically related to a legitimate interest in prison security.  The Court

also finds that Mr. Treesh could and did apply for an exemption from these regulations in order to wear headgear with feathers during Native American religious ceremonies. However, he did not get permission to do so at all times, and the Court finds it undisputed, on this record, that allowing Mr. Treesh to wear his headgear at all times could have a detrimental effect on order within CCI. In *Aqeel v. Seiter*, 781 F.Supp. 517 (S.D. Ohio 1991), this Court held that where the plaintiff, a Muslim inmate, was permitted to wear his head covering (tarboosh) for most of the day and to engage in other forms of worship, prison officials did not violate his constitutional rights by prohibiting him from wearing the tarboosh in the dining hall and at proceedings before the rules infraction board, even if his religion dictated that he wear it at all times. *Id*. at 521. *See also Davis v. Clinton*, 74 Fed. Appx. 452, 455 (6th Cir. 2003)(policy limiting wearing of religious garb to religious holidays imposed for security reasons was reasonably related to legitimate penological interests).

     In an even more instructive case cited in *Aqeel*, eighteen Native American inmates at a federal penitentiary in California challenged a blanket ban on headgear, including religious headbands, in the dining hall on the grounds that the ban unconstitutionally burdened their ability to practice their religion. *Standing Deer v. Carlson*, 831 F.2d 1525 (9th Cir. 1987). The district court entered summary judgment in favor of the prison officials, and the inmates unsuccessfully appealed. The court of appeals determined that, reviewing the evidence in the light most favorable to the inmates, the dress regulation in question was logically connected to the concerns about cleanliness, security, and safety which the officials had invoked to justify it. *Id*. at 528. The inmates offered no evidence that contradicted the officials' claim that dirty headgear had led to complaints and threats from other prisoners. Thus, the unrebutted evidence established without

doubt that the ban on headgear was logically related to legitimate penological interests. *Id.*

Here, Mr. Treesh presented no evidence that contradicts Ms. Jackson's statement that the rules governing the wearing of non-uniform apparel, such as religious headgear, are designed to maintain order, limit jealousy among inmates, and control the types of personal items inmates may possess.  Accordingly, there are no genuine issues of material fact as to whether the restriction is logically related to a legitimate interest in security.

There is also no dispute that Mr. Treesh has been provided with alternative means of exercising his right to pursue his chosen religion.  He is permitted to wear feathers in his hair during Native American religious ceremonies.  Presumably, he can wear the headband in his cell, as well.  The only times he was either threatened with discipline, or actually disciplined, for wearing his religious headgear was at the chow hall.  While Mr. Treesh may disagree with the defendants' assertion that he is allowed to wear the headband for religious ceremonies only, this dispute is not material to his claim so long as the restrictions, as enforced, do not violate his First Amendment rights.

Finally, there is no evidence in this case concerning the impact of any further accommodation and the existence of ready alternatives to the challenged regulation.  In other reported cases, however, including one from this Court, prison officials have had to deal with sanitary issues arising from the wearing of religious headbands in dining halls.  *See Aqeel* and *Standing Deer, supra*.

Applying the test set forth in *O'Lone* and *Turner*, the Court concludes that defendants Bobb-Itt, Bryan, Payne, and Brown are entitled to judgment as a matter of law on Mr. Treesh's free exercise claim as it relates either to injunctive relief or to damages because he has not shown

that any violation of his constitutional rights has occurred.

### B. The Claims of Verbal Abuse and Retaliation

Mr. Treesh also alleges that defendants Branham, Payne and McGrew psychologically abused him on multiple occasions by yelling at him, using obscene language, and threatening him with isolation if he continued with his religious practices and his use of the institutional informal complaint procedure. The defendants dispute these allegations. For summary judgment purposes, the Court must accept Mr. Treesh's version of the facts. However, even accepting that version of the facts, the defendants are entitled to summary judgment on this claim.

Verbal abuse or harassment directed toward an inmate is not actionable under either the Eighth or Fourteenth Amendments to the United States Constitution. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Therefore, even if some or all of the defendants yelled at Mr. Treesh and used obscene language toward him, they did not violate his constitutional rights. The alleged threats to place him in isolation, however, require further analysis since retaliation for the exercise of constitutional rights is itself a violation of the Constitution.

To prevail on a retaliation claim, a prisoner plaintiff must establish three elements: (1) that he or she was engaged in protected conduct; (2) an adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred*." Ishaaq v. Compton*, 900 F.Supp. 935 (W.D. Tenn. 1995), *quoting Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988).

The Court has already determined that, as a matter of law, Mr. Treesh was not engaging in

11

protected conduct when he wore his religious head gear to the chow hall. Therefore, the threats to retaliate against him for doing so did not infringe upon his First Amendment rights, and the Court need not evaluate the second and third elements of a retaliation claim. *See Thaddeus-X*, 175 F.3d at 395 (if inmate violates legitimate prison regulation, he is not engaged in protected conduct and cannot proceed beyond the first step).

Beyond those threats, however, Mr. Treesh also claims he was threatened for using the prison grievance system. The retaliatory filing of a disciplinary charge or other negative action as a response to filing a grievance strikes at the heart of an inmate's constitutional right to seek redress of grievances. *Id*. The Court of Appeals has recognized that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Thus, to the extent Mr. Treesh used the informal complaint system, he was, in fact, engaged in protected conduct, and the question then becomes whether he can satisfy the other elements of the *Thaddeus-X* test.

As to the second element, placing an inmate in isolation for any length of time constitutes an adverse action. *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). Even the threat of such placement can be an adverse action if the threat is sufficiently severe to deter a person of ordinary firmness from engaging in protected conduct. *Id*. The severity of such a threat is ordinarily a question of fact that is typically not amenable to summary judgment. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

The third element to be considered is whether the adverse actions were taken at least in part because of plaintiff's use of the informal complaint procedure. In order to satisfy this element, Mr. Treesh must present sufficient evidence to establish an inference that his use of the grievance

procedure at CCI was a "motivating factor" in the defendants' placement of him in isolation. *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010). A motivating factor "is one without which the action being challenged would not have been taken." *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002). Conclusory allegations of retaliatory motive which are not supported by material facts are insufficient to state a claim under §1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005).

Here, the record clearly demonstrates that Mr. Treesh was placed in isolation on July 10, 2009, for yelling at defendant Branham and refusing to take the feather out of his hair. Declaration of Lt. Sharon Branham, ¶¶9, 10. On July 14, 2009, Mr. Treesh appeared before defendant McGrew for a hearing on the conduct report of disobedience and disrespect. Complaint, p. 10, ¶14. The rules infraction board found him guilty of violating Rule 21 and Rule 26 and sentenced him to ten days with credit for time served. He was released from isolation on July 20, 2009. Mr. Treesh was again placed in isolation from November 5 through November 15, 2009, but the reasons for this disciplinary action are not clear from the record.

Given this record, Mr. Treesh has simply failed to come forward with any evidence that his use of the informal complaint procedure was a motivating factor in either the defendants' threats to place him in isolation or his actual placement in isolation. *See Lewis v. Turner*, 16 Fed.Appx. 302, 304 (6th Cir. 2001)(assuming plaintiff satisfied first two elements, he did nothing more than simply allege retaliation without establishing causal connection). Further, prison officials may lawfully advise an inmate that the filing of meritless grievances can result in discipline and can constitutionally discipline them for filing such grievances, *see Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000), so that to the extent that Mr. Treesh was threatened with sanctions if he

13

continued to file meritless grievances, such threats did not deter him from exercising any constitutional right - no such right exists. Defendants Bobb-Itt, Payne, Brown, and Bryan are therefore entitled to summary judgment on the retaliation claim.

## C. Mr. Treesh's Fourth Amendment Claim

The United States Supreme Court has long held that the Fourth Amendment's proscription against unreasonable searches and seizures does not apply within the confines of the prison cell. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). For this reason, Mr. Treesh cannot state a claim under §1983 based on the allegedly unconstitutional search of his prison cell.

## D. Mr. Treesh's Eighth Amendment Medical Claim

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Wilson v. Seiter*, 501 U.S. 294 (1991). In *Farmer v. Brennan*, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." *Id*. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. *Id*. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment

14

is not actionable under 42 U.S.C. §1983.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994).

      Mr. Treesh alleges that from November 5, 2009 to November 15, 2009, he was deprived of his needed pain medication.  He does not, however, describe the specific role each of the named defendants played in this deprivation.  Defendant Bobb-Itt has stated that she played no role in plaintiff's medical care whatsoever.  *See* Declaration of Leah Bobb-Itt, ¶8.  Moreover, there is no evidence in the record to connect any of the other defendants with Mr. Treesh's medical treatment at CCI.

      The Court will assume for the purposes of the defendants' motion that Mr. Treesh suffered from a serious medical condition which, in the absence of an analgesic such as ibuprofen, caused him considerable discomfort.  In order to meet the subjective component of an Eighth Amendment medical claim, however, Mr. Treesh is required to show that the defendants subjected him to an "unnecessary and wanton infliction of pain."  *Estelle*, 429 U.S. at 292.  Not only does he fail to present evidence that the defendants intentionally disregarded a substantial risk to his health, he fails to show that any of the defendants were involved with his medical care or even knew of his condition.  *See Lewis*, 16 Fed.Appx. at 304 (claim properly dismissed where inmate failed to allege facts which would reasonably associate any of the defendants to the deprivation of his medication). Accordingly, defendants Bobb-Itt, Payne, Brown, and Bryan are entitled to judgment as a matter of law on this claim.

15

## E. Mr. Treesh's Deprivation of Property Claim

Mr. Treesh alleges that several items of personal property came up missing after he returned to his cell after serving administrative segregation. He does not allege that his injury was caused by some established state procedure. As a consequence, no predeprivation notice was required or practical. *See Parratt v. Taylor*, 451 U.S. 527, 538 (1981), *overruled in part on other grounds Daniels v. Williams*, 474 U.S. 327 (1986). However, this claim fails because Mr. Treesh has not shown that existing state remedies to recover either his property or its value were inadequate; therefore, even if he had been deprived of items in which he had a property interest, that did not occur in the absence of due process of law.

The Supreme Court had held that an unauthorized deprivation of property by prison officials, exactly what Mr. Treesh says happened here, does not violate the Due Process Clause of the Fourteenth Amendment if adequate state post-deprivation remedies - that is, legal remedies that Mr. Treesh could have pursued after he discovered that his property had been either confiscated or destroyed - were available to him. *Hudson*, 468 U.S. at 533. Mr. Treesh has the burden of proving, as an element of his constitutional tort claim, that these state remedies were inadequate. *Jefferson v. Jefferson County Public School System*, 360 F.3d 583, 588 (6th Cir. 2004). He does not even mention in his complaint whether there was an available administrative scheme within CCI or a judicial remedy in tort through which he could have gotten his property back or been paid its value, and the Court can take judicial notice of the fact that tort remedies are available to prisoners to recover the value of property allegedly stolen or destroyed by prison officials. *See, e.g., Flournoy v. Morris*, 819 F.2d 289 (6th Cir. May 22, 1987) (unpublished), *citing* Ohio Rev. Code §§2737.02 and 2743.02. Therefore, Mr. Treesh's due process claim fails as

16

a matter of law.  *See also Pilgrim v. Littlefield*, 92 F.3d 413, 417 (6th Cir. 1996).

Moreover, assuming there was an administrative scheme at CCI which could have addressed the issue of his missing property, Mr. Treesh apparently did not utilize such procedure since defendant Bobb-Itt states that she was not aware of plaintiff's claim until he commenced this civil action.  Bobb-itt Declaration, ¶7.  The failure to exhaust administrative remedies would provide another basis for the dismissal of his claim.  *See* 42 U.S.C. §1997e(a).  The defendants are therefore entitled to summary judgment on this claim.

### F.  Claims Against Defendant Bryant

Mr. Treesh does not, in his complaint, describe any specific actions done by defendant Bryant.  While the complaint alleges an institutional conspiracy among many of the prison staff to deprive Mr. Treesh of more than his constitutional rights, he does not say who was involved in that alleged conspiracy, and  the complaint never expressly states that defendant Bryant was a member of any such conspiracy.   These omissions are fatal to any claim against this defendant.

"It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983."  *Guiterrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  The complaint in question must "allege specific facts showing agreement and concerted actions among the defendants...."  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).  The failure to allege all elements of a conspiracy, including an agreement or a meeting of the minds among the alleged conspirators, and overt actions in furtherance of the conspiracy, requires dismissal of the complaint.  *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988); *McGillicuddy v. Clements*, 746 F.2d 76, 77 (1st Cir.

1984).  Unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted.  *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Here, Mr. Treesh has not alleged any unconstitutional actions on the part of this defendant.  Because the complaint's allegations of conspiracy are insufficient as a matter of law, defendant Bryant is entitled to summary judgment as well.

### G.  Injunctive Relief

Mr. Treesh has asked for injunctive relief both in his complaint and in his more recent motion for a preliminary injunction.  In order to demonstrate an entitlement to permanent injunctive relief, he would have to demonstrate a constitutional or statutory violation and, in addition, prove that he would suffer irreparable injury absent the issuance of an injunction and that he has no adequate remedy at law.  *See United States v. Miami University*, 294 F.3d 797, 816 (6th Cir. 2002).

As far as permanent injunctive relief is concerned, Mr. Treesh has not met this standard.  The Court has concluded that he cannot overcome the defendants' motion for summary judgment on his constitutional claims.  As to his statutory claim under RLUIPA, Mr. Treesh has not come forward with evidence to show that the restrictions placed on his wearing of religious headgear in the institutional dining hall are not the least restrictive means of achieving defendants' objective of maintaining institutional security.  There may be other such means, but this record does not permit the Court to determine what they are or how effective they would be in promoting the institution's legitimate concern for the safety of both Mr. Treesh and other inmates.  If anything, Mr. Treesh'

complaints about constant harassment from other inmates about his headgear reinforces the notion that the defendants' safety concerns are justified.

As to Mr. Treesh's most recent request for preliminary injunctive relief, the Court's decision to grant summary judgment to defendants makes that matter moot.  As the Court of Appeals noted in *Tenneco Automotive Operating Co., Inc. v. Kingdom Auto Parts*, 410 Fed. Appx. 841, **14 (6th Cir. October 28, 2010), a plaintiff seeking preliminary injunctive relief "cannot establish that [he] is likely to succeed on the merits when [he] has lost on the merits." This ruling also moots Mr. Treesh's request for reconsideration of the Court's February 22, 2011 (which was actually issued by the undersigned District Judge and not the Magistrate Judge, as Mr. Treesh seems to believe); in any event, Mr. Treesh has presented no grounds for reconsidering that order.

## IV. DISPOSITION

For all of the reasons stated in this Opinion and Order, the Court **GRANTS** defendants' motion for summary judgment (#64) and **DENIES** Mr. Treesh's motions for a preliminary injunction (#67) and for summary judgment (#61).  His objection to the Order of February 22, 2011 (#68) is **OVERRULED**.  This case is **DISMISSED WITH PREJUDICE.**  The Clerk shall enter judgment in favor of the defendants.

**IT IS SO ORDERED**.

                              */s/ George C. Smith*
                              **GEORGE C. SMITH, JUDGE**
                              **UNITED STATES DISTRICT COURT**